FIRST SECURITY FINANCIAL, a Utah corporation, Plaintiff and Respondent,

v.

OKLAND LTD., INC., and Bradshaw–Ferrin Development Company, now known as Bradshaw Development Co., a Utah corporation, Defendants and Appellants,

v.

Doug BRADSHAW, Robert M. Simonsen, City Gate Condominium Partnership, a limited partnership, and John Does 1–5, Third–Party Defendants and Respondents.

No. 860314–CA.

Court of Appeals of Utah.

Feb. 10, 1988.

John Michael Coombs, Leonard W. Burningham (argued), Salt Lake City, for Okland Ltd.

Steven D. Crawley, Salt Lake City, for Bradshaw Development.

Kyle W. Jones, Salt Lake City, for First Sec.

L.R. Gardiner, Fox, Edwards, Gardiner & Brown, Salt Lake City, for City Gate Condominium Partnership.

Before GREENWOOD, JACKSON and ORME, JJ.

## OPINION

GREENWOOD, Judge:

Defendant Okland Ltd., Inc. (Okland) appeals from a summary judgment granted plaintiff, First Security Financial (First Security), for Okland's breach of an equipment lease agreement. Okland claims on appeal that the trial court erred in granting the motion for summary judgment because geniune issues of material fact existed, or, alternatively, the lease should be declared void as a penalty and the judgment reversed.

On September 31, 1981, Okland and Bradshaw–Ferrin Development Co. (BFDC) executed an equipment lease agreement as lessees, agreeing to pay certain sums to Murray First Thrift (MFT), lessor, for lease of personal property. MFT simultaneously purchased the property described in the lease agreement from Okland and BFDC, as evidenced by a check and bill of sale. The lease provided for a term of sixty months, with monthly payments of $775.19. The lessees paid $1,550.38, representing first and last months' rent, on execution of the lease agreement.

After the lessees had missed several payments under the lease agreement, First Security filed suit against Okland and BFDC on May 16, 1984, alleging that First Security was the successor in interest to MFT on the lease agreement, that the lease was in default, and that it should be granted judgment for amounts due under the lease and return of the equipment leased. Okland's answer generally denied it had sufficient information to admit or deny the complaint's allegations. The answer further stated that Okland had acted in good faith in regard to the lease agreement and that First Security had failed to mitigate its damages. Okland also cross-claimed against Doug Bradshaw, a principal of BFDC, alleging that Okland had withdrawn from the project in which the leased equipment was to be used, that Doug Bradshaw had orally represented that Okland would not need to seek to be released by MFT from obligation on the lease agreement, and that Doug Bradshaw would hold Okland harmless from payment on the lease.

First Security filed a motion for summary judgment against Okland and BFDC in April 1985, supported by an affidavit of attorney fees and an affidavit of a First Security officer, stating the amounts owed under the lease and that the lease attached to the complaint was identical to the one in First Security's files. Okland opposed the motion and filed an affidavit of Okland's counsel, stating that First Security's counsel had said that the lease was a "sale lease-back" and not a true lease. Okland also filed an affidavit of James Okland, president of Okland, stating that he could not obtain information to verify the accuracy of First Security's affidavits. Okland also sought additional time to conduct discovery. On May 17, 1985, the trial court granted First Security summary judgment against BFDC, which did not appear nor otherwise oppose the motion, and continued the hearing on the motion against Okland.

In September 1985, First Security filed another affidavit executed by a First Security officer, asserting that the allegations of the complaint were true and setting forth various amounts owed under the lease agreement totalling $31,993.23. Okland filed an amended affidavit of James Okland stating that the lease did not reflect the parties' agreement and that First Security had not attempted to mitigate its damages by selling the leased property. Okland also filed a memorandum which claimed that material issues of fact existed precluding granting of summary judgement. Those issues were: (1) whether the lease was a security agreement; and (2) the unavailability of documentation regarding the purchase price of the equipment. Okland also sought leave to amend its answer to the complaint.

On September 9, 1985, the court granted Okland's motion to amend its answer. The amended answer alleged as affirmative defenses that plaintiff's claim was barred by failure of consideration and by the fact that the lease agreement was really a security agreement. On September 23, 1985, the court granted First Security's motion for summary judgment against Okland for $33,893.23 and found that there were no factual issues regarding whether the contract was a lease, security agreement or contract of guarantee and no evidence that First Security had failed to mitigate damages.

## I

### SUMMARY JUDGMENT

We first consider whether the trial court correctly granted First Security's motion for summary judgment against Okland. We will review the facts and inferences in the light most favorable to the losing party, and determine if the undisputed facts before the court establish First Security's right to judgment as a matter of law. *Atlas Corp. v. Clovis Nat'l. Bank,* 737 P.2d 225, 229 (Utah 1987).

Okland claims that there are two factual disputes precluding summary judgment; (1) the damages recoverable under the lease agreement; and (2) whether the lease agreement was actually a security agreement.

### A.

■ We first address the question of damages recoverable under the agreement. First Security filed an affidavit in support of its motion for summary judgment signed by an officer of First Security. The affidavit states that the affiant is an officer of First Security and that he has access to its files and has personal knowledge of the matters set forth in the affidavit. The affidavit further avers that the equipment listed in the lease agreement was delivered to defendants and had not been repossessed by First Security. The affidavit concludes by itemizing amounts due under the lease for monthly payments, 1984 and 1985 property taxes, late charges and interest accrued as of the date of the affidavit. A later affidavit of counsel set forth attorney fees sought by First Security.

An amended affidavit of James Okland, in opposition to the motion for summary judgment, states that, "to my knowledge," the first payment under the lease, which included the last month's rent, was not applied to reduce the balance owing under the lease. In addition, the affidavit claims that the affiant never received an accounting of application of payments made and that affiant "believe[s]" that the amount prayed for in the complaint is erroneous. Utah R.Civ.P. 56(e) requires that affidavits in opposition to a motion for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." *See also Utah Farm Prod. Credit Ass'n. v. Watts,* 737 P.2d 154, 157 (Utah 1987). Mr. Okland's affidavit fails to comply with the rule's requirements. His belief that facts asserted by the opposition are erroneous is not enough to defeat a motion for summary judgment. In resisting a motion for summary judgment, "bare contentions, unsupported by any specifications of facts in support thereof, raise no material questions of fact." *Brigham Truck & Implement Co. v. Fridal,* 71 Utah Adv.Rep. 9, 11, 746 P.2d 1171 (Utah 1987) (per curiam). The affidavit does not contain facts which would be admissible in evidence controverting First Security's affidavit as to amounts owed, but only the unsupported contention that First Security's calculations are erroneous.

■ We have also examined the lease agreement itself to determine if the damages included in the summary judgment were proper as a matter of law. We conclude that the lease agreement provides for each category of damages awarded. Okland claims that it was error for the court to award prejudgment interest on the unpaid balance of payments due under the lease. Okland misconstrues the interest award. The lease provides that upon de-

fault the lessor can accelerate payment and recover interest from the date of acceleration on the total amount outstanding. Therefore, the interest is not prejudgment interest but interest expressly payable under the terms of the contract. Okland also claims the late payment award was erroneous. However, the late charge is assessed upon the accelerated balance due under the contract, in accord with the terms of the contract, and is, therefore, recoverable in an action under the contract.

### B.

Okland's second contention is that an issue of fact existed regarding whether the agreement is a true lease or a security agreement, precluding summary judgment. James Okland's affidavit stated that the actual agreement among MFT, Okland and BFDC, was for a "sale lease-back," with an option to purchase the property for a nominal sum at the end of the lease term. Okland's memorandum in opposition to the motion for summary judgment includes portions of a deposition of a former employee of MFT, which supports the assertion that the transaction was really intended as a secured sale, not a true lease. Okland cites *Colonial Leasing Co. of New England, Inc. v. Larsen Bros. Constr.*, 731 P.2d 483 (Utah 1986), as controlling precedent. In *Colonial Leasing*, the trial court excluded parol evidence offered to prove that an ostensible lease agreement was actually intended to be a sales and security agreement subject to the provisions of Article 9 of the Uniform Commercial Code. The Utah Supreme Court reversed and remanded, stating that "whether a lease was intended as security for a sale is a question to be determined on the facts of each case, as is the issue of whether the nature of the document raises questions of fact that preclude summary judgment." *Id.* at 488. Okland argues, therefore, that this case should be reversed and remanded for a factual determination of whether a security agreement was intended by the parties. However, the purpose of such a factual determination must be examined. In *FMA Financial Corp. v. Pro–Printers*, 590 P.2d 803 (Utah 1979), the Utah Supreme Court upheld a trial court's determination that a lease of personal property was actually a secured sale and, therefore, subject to the provisions of Article 9. The Court further found that plaintiff in that case had failed to properly comply with the default provisions of Article 9 and denied it a deficiency judgment. Plaintiff's breach consisted of a failure to dispose of the collateral in a commercially reasonable manner.

 In this case, the putative secured party, First Security, did not repossess the "collateral" prior to filing suit nor at any time during the proceedings before us. Furthermore, a secured party is not required by Article 9 to liquidate collateral prior to pursuing other remedies. Utah Code Ann. § 70A–9–501 (1980) provides that a secured party's rights upon default are alternative. A secured party "has an option to pursue any of the parties liable on [a] note, which is secured solely by personal property, and may also, at its option, ignore that security and satisfy its judgment from other property in the hands of the judgment debtor." *Kennedy v. Bank of Ephraim*, 594 P.2d 881, 884 (Utah 1979). Therefore, First Security was within its rights, even as a secured creditor, in not repossessing and selling the "collateral," and then applying those proceeds to the debt. The cases cited by Okland all involve failure of a secured creditor to properly care for or dispose of collateral. However, the duties of a secured creditor to protect and properly sell collateral do not arise until the secured party has exercised its right to repossess the collateral. *North Carolina Nat'l Bank v. Sharpe*, 35 N.C. App. 404, 241 S.E.2d 360, 361 (1978). Since First Security did not repossess the equipment, it had no Article 9 duties regarding the equipment even if Article 9 applied. *See Themy v. Seagull Enters., Inc.*, 595 P.2d 526, 529 (Utah 1979) (summary judgment appropriate, even if facts in dispute, "where, even according to the facts as contended by the losing party, the moving party is entitled to judgment as a matter of law").

Furthermore, Okland has not asserted any specific defenses or counterclaims as a

debtor under Article 9. Given that failure, it makes no difference if the contract at issue is viewed as a lease agreement or a sales agreement. The monthly payments required are either lease payments or installment sales payments. However denominated, monthly payments and any other damages designated in the contract as payable upon default, are recoverable as a basic matter of contract law in this case. Okland may not prevail on a defense theory which has not been pled or even articulated at any point in the proceedings. This Court has previously held, in affirming a summary judgment, that "a judgment order must not only be supported by competent evidence, but the pleadings must allege applicable legal theories." *Hendricks v. Interstate Homes, Inc.*, 745 P.2d 475, 477 (Utah App.1987).

Therefore, we find that the trial court correctly granted First Security summary judgment against Okland.

## II

### ALTERNATIVE REMEDY

Okland maintains, alternatively, that even if otherwise appropriate, the trial court's judgment should be reversed and judgment entered in its favor, with this Court finding that the agreement is void as a matter of law and unenforceable as a penalty. We need not examine this argument as it was not raised before the trial court and cannot be considered for the first time on appeal. *Trayner v. Cushing*, 688 P.2d 856, 857 (Utah 1984); *James v. Preston*, 746 P.2d 799, 801 (Utah App.1987).

The trial court's judgment is affirmed. Costs are awarded to First Security.

ORME and JACKSON, JJ., concur.