961 F.2d 219
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 GOLD STANDARD, INC., a Utah corporation,
Plaintiff-counter-defendant-Appellant,
v.
MONTAGU FINANCE LTD., a United Kingdom corporation; John
Van Der WESTHUIZEN, citizen of the United Kingdom; Samuel
Montagu & Co., Ltd., a United Kingdom corporation,
Defendants-third-party-defendants-Appellees.
v.
James D. TOCHER; Scott L. Smith; Canorex International,
Inc., Third-Party Defendants.
 No. 90-4205.
 United States Court of Appeals, Tenth Circuit.
 April 14, 1992.
 
 Before LOGAN, and TACHA, Circuit Judges, and COOK, Senior District Judge.**
 TACHA, Circuit Judge.
 
 
 1
 Appellant, Gold Standard, Inc., appeals from a judgment entered following a jury trial and verdict in favor of the defendants, Samuel Montagu & Co., Ltd., Montagu Mining Finance, Ltd., and John van der Westhuizen (collectively "Montagu"). On appeal, Gold Standard challenges the jury instructions on the grounds that they misled the jury as to the legal standards governing a breach of fiduciary duty claim. Specifically, Gold Standard argues that the trial court erred in its instructions to the jury limiting the circumstances under which fiduciary obligations may arise. Gold Standard also argues that the trial court erroneously failed to instruct the jury to take merchant banking industry norms and practices into account in determining whether the defendants owed fiduciary obligations to Gold Standard. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.
 
 
 2
 Gold Standard brought this diversity action seeking damages against Montagu on the grounds that Montagu misappropriated Gold Standard's confidential information and breached the fiduciary duty it owed to Gold Standard. One of the defendants, Samuel Montagu & Co., Ltd., is a merchant bank. Gold Standard allegedly formed a "merchant bank relationship" with the defendants in 1984 in order to obtain advice on the acquisition of an interest in the Mercur Gold Mine. According to Gold Standard, Montagu gave Gold Standard's confidential information to a third party in order to help the third party acquire the Mercur Gold Mine. The jury returned a verdict for Montagu on the breach of fiduciary duty claim. The jury answered "no" to special verdict question # 9, which asked whether a fiduciary relationship existed between Gold Standard and Montagu.
 
 
 3
 Gold Standard argues that the district court's jury instructions improperly limited the circumstances under which a fiduciary duty may arise. The parties agree that the issue of when a fiduciary duty may arise is controlled by Utah law. We review de novo the district court's interpretation of state law. MidAmerica Fed. Sav. & Loan Ass'n v. Shearson/American Express, Inc., 886 F.2d 1249, 1257 (10th Cir.1989). In exercising de novo review we afford no deference to the district court's interpretation of state law. Salve Regina College v. Russell, 111 S.Ct. 1217, 1224 (1991).
 
 
 4
 Utah courts have "decline[d] to decide whether a bank can develop a fiduciary relationship with its borrower." Zions First Nat'l Bank v. Rocky Mountain Irrigation, Inc., 795 P.2d 658, 664 (Utah 1990). Despite the "uncertain state of the law," id., the trial court instructed the jury that a fiduciary duty implied in law may exist between Gold Standard and Montagu.
 
 
 5
 The Utah Supreme Court recently explained that to determine whether a fiduciary relationship should be implied in law, we must consider the following:
 
 
 6
 A fiduciary relationship imparts a position of peculiar confidence placed by one individual in another. A fiduciary is a person with a duty to act primarily for the benefit of another. A fiduciary is in a position to have and exercise and does have and exercise influence over another. A fiduciary relationship implies a condition of superiority of one of the parties over the other. Generally, in a fiduciary relationship, the property, interest or authority of the other is placed in the charge of the fiduciary.
 
 
 7
 First Sec. Bank of Utah N.A. v. Banberry Dev. Corp., 786 P.2d 1326, 1333 (Utah 1990) (quoting Denison State Bank v. Madeira, 640 P.2d 1235, 1241 (Kan.1982)). The court added that
 
 
 8
 [t]here is no invariable rule which determines the existence of a fiduciary relationship, but it is manifest in all the decisions that there must be not only confidence of the one in the other, but there must exist a certain inequality, dependence, weakness of age, of mental strength, business intelligence, knowledge of the facts involved, or other conditions, giving to one advantage over the other.
 
 
 9
 Id. (quoting Yuster v. Keefe, 90 N.E. 920, 922 (Ind.App.1910)).
 
 
 10
 In another recent case, Von Hake v. Thomas, 705 P.2d 766 (Utah 1985), the Utah Supreme Court stated similar requirements for establishing a fiduciary or confidential relationship:
 
 
 11
 A confidential relationship is a prerequisite to proving constructive fraud. A confidential relationship arises when one party, having gained the trust and confidence of another, exercises extraordinary influence over the other party.... "The doctrine of confidential relationship rests upon the principle of inequality between the parties, and implies a position of superiority occupied by one of the parties over the other. Mere confidence in one person by another is not sufficient alone to constitute such a relationship. The confidence must be reposed by one under such circumstances as to create a corresponding duty, either legal or moral, upon the part of the other to observe the confidence, and it must result in a situation where as a matter of fact there is superior influence on one side and dependence on the other."
 
 
 12
 Id. at 769 (quoting Bradbury v. Rasmussen, 401 P.2d 710, 713 (Utah 1965)).
 
 
 13
 Gold Standard contests the language of Jury Instruction No. 38. In Instruction No. 38, the trial court instructed the jury that "in order to establish a fiduciary relationship implied in law, the following elements are essential:"
 
 
 14
 (1) That Gold Standard and Montagu formed a relationship that would have caused an ordinarily prudent person in Gold Standard's position to place confidence and trust in Montagu to such a degree that it would have resulted in the substitution of Montagu's will for Gold Standard's will in the important aspects over the subject matter of the lawsuit; and
 
 
 15
 (2) that Gold Standard actually placed that degree of trust in Montagu; and
 
 
 16
 (3) that Gold Standard was justified in placing that degree of trust in Montagu; and
 
 
 17
 (4) that Montagu understood that Gold Standard was placing that degree of trust in Montagu and accepted that trust; and
 
 
 18
 (5) that Gold Standard placed its interest in or authority over its dealing concerning the Mercur Mine in Montagu's charge; and
 
 
 19
 (6) that Gold Standard and Montagu occupied unequal positions with respect to business intelligence, knowledge of the facts involved or other conditions, so that Montagu had an unfair advantage over Gold Standard; and
 
 
 20
 (7) that Gold Standard was inferior to Montagu; and
 
 
 21
 (8) that Gold Standard was dependent on Montagu; and
 
 
 22
 (9) that Gold Standard turned its decision making over to Montagu; and
 
 
 23
 (10) that Montagu had an overpowering influence on Gold Standard and used that influence to substitute its will for Gold Standard's will.
 
 
 24
 (Instruction No. 38).
 
 
 25
 Gold Standard argues that the "substitution of will" language appearing in Instruction No. 38 and other instructions is an inappropriate standard for fiduciary relationship cases. The "substitution of will" language, however, has been employed by the Utah Supreme Court in fiduciary duty cases. See e.g., Von Hake, 705 P.2d at 770; Bradbury v. Rasmussen, 401 P.2d 710, 713 (Utah 1965). In Bradbury, the Utah Supreme Court explained that a fiduciary relationship
 
 
 26
 must be such as would lead an ordinarily prudent person in the management of his business affairs to repose that degree of confidence in the other party which largely results in the substitution of the will of the latter for that of the former in the material matters involved in the transaction.
 
 
 27
 401 P.2d at 713. Gold Standard has failed to convince us that the "substitution of will" language inaccurately conveys the law governing fiduciary relationships in Utah.
 
 
 28
 Gold Standard also objects to Instruction No. 38 on the grounds that, regardless of the factual context, Utah courts have never required all ten elements as a prerequisite for finding a fiduciary relationship. Gold Standard maintains that Instruction No. 38 is merely a compilation of factors--not "essential elements"--that have been borrowed out of context from factually distinct cases. Furthermore, Gold Standard argues that the elements listed in Instruction No. 38 are imprecise and misleading.
 
 
 29
 We are mindful that when we examine jury instructions, we must
 
 
 30
 review the record as a whole to determine whether the instructions "state the law which governs and provided the jury with an ample understanding of the issues and the standards applicable." We thus "consider all that the jury heard and, from the standpoint of the jury, decide 'not whether the charge was faultless in every particular but whether the jury was misled in any way and whether it had understanding of the issues and its duty to determine the issues.' "
 
 
 31
 Big Horn Coal Co. v. Commonwealth Edison Co., 852 F.2d 1259, 1271 (10th Cir.1988) (citations omitted).
 
 
 32
 We conclude that Instruction No. 38 conveyed to the jury the issues and standards from Utah's fiduciary relationship cases. Although the language in Instruction No. 38 is, in places, somewhat more exacting than the language of some of Utah's fiduciary relationship cases, Gold Standard has failed to establish that the instruction misled the jury.
 
 
 33
 Gold Standard also maintains that some of the "essential elements" of Instruction No. 38 are not appropriate for determining when a fiduciary relationship can arise in the merchant banking industry. Gold Standard argues that a fiduciary relationship arises in the merchant banking context "when the bank invites trust and requests information with which to render financial advice," and when the customer justifiably "reposes trust in a bank and relies on the bank for financial advice." In short, we are not persuaded that Utah courts would measure fiduciary relationships in merchant banking cases by a relaxed set of standards which do not incorporate some of the fundamental principles of law governing fiduciary relationships in other cases.
 
 
 34
 We have considered Gold Standard's remaining objections to Instructions 36, 38, 39, 40 and 41, and find them to be without merit. We are not convinced that the instructions, taken individually and as a whole, misled the jury.
 
 
 35
 Finally, Gold Standard argues that the court should have specifically instructed the jury to consider the customs and standards of the merchant banking industry as it determined whether a fiduciary relationship existed between Gold Standard and Montagu. Gold Standard cites no support for its argument that industry standards should govern the formation of a fiduciary relationship. The jury was allowed to hear Gold Standard's evidence regarding customs and standards of the merchant banking industry. We cannot conclude that the trial court erred in refusing to instruct the jury on this matter.
 
 
 36
 AFFIRMED.
 
 
 
 *
 The Honorable H. Dale Cook, Senior District Judge for the United States District Court for the Northern District of Oklahoma, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3