**STATE BANK OF SOUTHERN UTAH, a Utah Banking Corporation, Plaintiff and Appellee,**

v.

**TROY HYGRO SYSTEMS, INC.; Michael R. Kehl; Gloria F. Kehl; Lenore F. Kehl; Keith Kehl; Karen Sue Kehl and John Does 1 through 10, Defendants and Appellants.**

**TROY HYGRO SYSTEMS, INC.; Michael R. Kehl; Gloria F. Kehl; Lenore F. Kehl; Keith Kehl; Karen Sue Kehl, Counterclaimants and Appellants,**

v.

**STATE BANK OF SOUTHERN UTAH, a Utah Banking Corporation, Counterclaim Defendant and Appellee.**

No. 930358–CA.

Court of Appeals of Utah.

April 20, 1995.

---

Charles C. Brown, Jeffrey B. Brown, and Budge W. Call, Salt Lake City, for appellants.

Thomas M. Higbee, Cedar City, for appellee.

Before REGNAL W. GARFF,[1] Senior Judge, and ORME and WILKINS, JJ.

## OPINION

WILKINS, Judge:

We have determined that "[t]he facts and legal arguments are adequately presented in the briefs and record and the decisional process would not be significantly aided by oral argument." Utah R.App.P. 29(a)(3).

Troy Hygro Systems, Inc. and the Kehls (collectively "Hygro") appeal various grants of summary judgment in favor of State Bank of Southern Utah ("the bank"). The trial court granted the bank's motion for summary judgment against Hygro's counterclaims, and subsequently granted the bank's motion for summary judgment on its own complaint. We affirm.

## BACKGROUND

Because we are reviewing a grant of summary judgment, we recite the facts in the light most favorable to Hygro, the non-moving party. *See Higgins v. Salt Lake County,* 855 P.2d 231, 233 (Utah 1993). Hygro owned and operated greenhouses in the New Castle area in southern Utah. Early in 1985, Hygro approached the bank in order to obtain a loan to finance construction of additional greenhouses on property leased by Hygro. Hygro originally intended to borrow $170,000, but when the lessor of the property requested that Hygro purchase the property as well, Hygro eventually sought to borrow $325,000.

The loan was submitted to the Small Business Administration of the United States Government (SBA) for approval. Before approval was received, Hygro submitted various pro-formas and construction schedules to the bank detailing its plans. Sometime during the negotiation process, the bank, through one of its officers, purportedly indicated that it would have the money disbursed to Hygro immediately upon SBA approval.

On September 3, 1985, the SBA issued its written authorization for the new loan. However, the bank was unable to make the loan at that time without surpassing its lending capacity. The loan was ultimately closed on October 7, 1985.

This delay in financing led to delays in construction and in the planting of Hygro's tomato crop, thereby putting Hygro in financial difficulty. To help remedy Hygro's cash flow problems, the bank loaned an additional $60,000 to Hygro on February 10, 1987, and made another loan to Hygro on November 7, 1988.

Hygro eventually defaulted on the loans, and the bank filed this action on December 13, 1990 to collect the unpaid balance of the loans. Hygro responded with its answer of June 7, 1991, setting up various defenses and counterclaims. The bank made a motion for partial summary judgment on Hygro's counterclaims. After a hearing, the trial court granted the motion, dismissing all of Hygro's claims but one, which later went to trial.[2]

The bank then made a motion for partial summary judgment on its complaint. Hygro relied on several affirmative defenses raised in its unverified answer. These defenses were not supported by the affidavits submitted by Hygro. The trial court granted summary judgment on the bank's complaint. Hygro appeals.

## ISSUES FOR REVIEW

Hygro contends that in reliance on various statutes of limitations, the trial court improp-

---

**1.** Senior Judge Regnal W. Garff, acting pursuant to appointment under Rule 3–108(4), Utah Code of Judicial Administration.

**2.** The only issue that went to trial was Hygro's claim that the 1987 loan proceeds were improperly disbursed. Judgment was later entered in the bank's favor.

erly granted summary judgment as to Hygro's counterclaims. Hygro also asserts that genuine issues of material fact remain with respect to its claims, precluding summary judgment. Finally, Hygro contends that the trial court erroneously dismissed Hygro's affirmative defenses in reliance on section 78–12–44 of the Utah Code.

## STANDARD OF REVIEW

■ Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Utah R.Civ.P. 56(c). Accordingly, whether a party is entitled to summary judgment is a question of law reviewed for correctness. *Higgins v. Salt Lake County*, 855 P.2d 231, 235 (Utah 1993). We will view the properly supported facts, including all inferences arising from those facts, in a light most favorable to Hygro in determining whether any issue of material fact exists and whether the bank is entitled to judgment as a matter of law. *See Chapman v. Primary Children's Hosp.*, 784 P.2d 1181, 1182–83 (Utah 1989).

## ANALYSIS

### I. Hygro's Counterclaims

#### A. Breach of Contract

■ Hygro's first counterclaim is for breach of contract, the essence of which was the bank's alleged promise to fund the 1985 loan immediately upon SBA approval. This claim fails under the applicable statute of limitations. Even assuming the existence of the contract alleged by Hygro, such a contract was based on an oral agreement, and Hygro's claim is time-barred under the terms of Utah Code Ann. § 78–12–25 (1992).

Hygro claims that the bank's alleged breach was part of the overall loan agreement, memorialized in writing on October 7, 1985. Nevertheless, the alleged commitment to fund the loan immediately upon SBA approval predated the loan agreement of October 7 and was never reduced to writing. Indeed, if such a commitment existed, the bank breached this obligation when SBA approval was received on September 3, 1985, more than a month before any written contract existed, and when the loan funds were not immediately disbursed.

Because the bank's alleged obligation was at all times oral, was allegedly breached before any written agreement was in place, and was never mentioned in any of the subsequent written agreements, we conclude that the agreement allegedly breached did not sufficiently relate to or grow out of a written instrument to constitute "[a]n action upon any contract, obligation, or liability founded upon an instrument in writing." *Id.* § 78–12–23. Thus, even if a material fact issue existed with respect to the agreement, the trial court properly concluded that Hygro's counterclaim was barred by the four-year limitation period governing actions on oral agreements. *See id.* § 78–12–25.

#### B. Negligent Disbursal

■ Hygro also alleges that the bank was negligent in disbursing the loan funds with respect to the 1985 loan. Claims of negligence are governed by the four-year limitation period established in section 78–12–25(3) of the Utah Code. *See Matheson v. Pearson*, 619 P.2d 321, 323 (Utah 1980) (indicating that action for negligence is governed by Utah's residuary limitation period found in section 78–12–25). Because this action was commenced more than four years after the 1985 loan was disbursed, Hygro's counterclaim for negligent disbursal is time barred. *See Doxey–Layton Co. v. Clark*, 548 P.2d 902, 906 (Utah 1976) (holding that counterclaim arising out of transaction alleged in complaint and existing when complaint is filed, if not time barred at that time, will not be barred by subsequent running of statute of limitations); *Moffit v. Barr*, 837 P.2d 572, 573–74 (Utah App.1992).

#### C. Promissory Estoppel

■ Hygro's third counterclaim is for damages based on promissory estoppel. A claim for promissory estoppel also is governed by the four-year limitation period in section 78–12–25(3). Such a period began to run at the time the bank received SBA approval but failed to disburse the funds. Accordingly, Hygro's claim for promissory es-

toppel is likewise barred under the statute of limitations.

### D. Economic Duress

■ Hygro also raises a claim of economic duress against the bank. Utah has adopted the legal standards of duress set forth in sections 174 through 176 of the Restatement (Second) of Contracts. *Andreini v. Hultgren,* 860 P.2d 916, 921 (Utah 1993). Section 175(1) establishes that a contract is voidable for duress "[i]f a party's manifestation of assent is induced by an improper threat by the other party that leaves the victim no reasonable alternative." Restatement (Second) of Contracts § 175(1) (1979). Section 176 sets forth the circumstances under which a threat is improper. *Id.* § 176.

■ Hygro has not provided any evidence that the bank made any threat, improper or otherwise, by reason of which Hygro felt compelled to complete each of the three loans. Hygro contends that the bank willfully breached its agreement to fund the 1985 loan immediately upon SBA approval, knowingly leaving Hygro with no alternative but to accept the loans on the bank's terms. Hygro has presented no evidence that any such breach was willful, or in any way designed to compel Hygro to agree to additional terms before completing the loan. Hygro may have felt economic pressure to take each of the loans, but our supreme court has recognized that " '[t]he mere fact that a contract is entered into under stress or pecuniary necessity is insufficient [to constitute duress].' " *Horgan v. Industrial Design Corp.,* 657 P.2d 751, 753 (Utah 1982) (quoting *Retail Clerks Health & Welfare Trust Funds v. Shopland Supermarket, Inc.,* 96 Wash.2d 939, 640 P.2d 1051, 1054 (1982)). Accordingly, we conclude that Hygro has failed, as a matter of law, to demonstrate the existence of a genuine dispute of material fact concerning its claim of economic duress. The claim was properly dismissed.

### E. Other Claims

■ Hygro also brings counterclaims for control and self-dealing by the bank. Hygro claims that the bank had a special or fiduciary relationship with Hygro. Ordinarily, no fiduciary relationship exists between a bank and its customer. *See First Nat'l Bank of Meeker v. Theos,* 794 P.2d 1055, 1060 (Colo. App.1990). Nevertheless other courts have found various circumstances when such a fiduciary relationship may exist. *See id.* at 1060–61. In Utah, a fiduciary or confidential relationship will be found "when one party, having gained the trust and confidence of another exercises extraordinary influence over the other party." *Von Hake v. Thomas,* 705 P.2d 766, 769 (Utah 1985).

■ Hygro claims that it trusted the bank to advise Hygro, and to otherwise act in Hygro's best interest, but presents no evidence in support of this claim. The parties were involved in a business relationship, transacting loans at arm's length. Furthermore, " '[m]ere confidence in one [party] by another is not sufficient alone to constitute [a fiduciary or confidential] relationship.' " *Id.* (quoting *Bradbury v. Rasmussen,* 16 Utah 2d 378, 401 P.2d 710, 713 (1965)). Without a fiduciary relationship between the bank and Hygro, Hygro cannot support a claim for self-dealing by the bank. Neither has Hygro alleged sufficient facts to establish a cause of action for extraordinary control exercised by the bank over Hygro. These claims fail as a matter of law.

■ Hygro has failed to support its claim for breach of the duty of good faith and fair dealing by alleging any facts creating a claim separate from the claims already described. Thus, for the same reasons that Hygro's other claims failed as a matter of law, this claim fails.

### II. Hygro's Defenses

Hygro further contends that the trial court erroneously dismissed Hygro's affirmative defenses in reliance on the wording of the last sentence of section 78–12–44 of the Utah Code, which states in full:

> In any case founded on contract, when any part of the principal or interest shall have been paid, or an acknowledgment of an existing liability, debt or claim, or any promise to pay the same, shall have been made, an action may be brought within the period prescribed for the same after such

payment, acknowledgment or promise; but such acknowledgment or promise must be in writing, signed by the party to be charged thereby. *When a right of action is barred by the provisions of any statute, it shall be unavailable either as a cause of action or ground of defense.*

Utah Code Ann. § 78–12–44 (1992) (emphasis added).

 Section 78–12–44 stands for the proposition that, in any case founded upon a contract, a new promise, part payment, or acknowledgment of a past debt or obligation acts to extend the applicable statute of limitations. This statutory exception to the running of the statute of limitations is a codification—and modification—of an early common-law rule. *See Yergensen v. Ford,* 16 Utah 2d 397, 399, 402 P.2d 696, 697 (1965).

Historically, statutes of limitation in this country developed from English parliamentary acts and contained no part-payment or acknowledgment exceptions to prevent the operation of the statutes. *Olson v. Dahl,* 99 Minn. 433, 109 N.W. 1001, 1001–02 (1906). If literally applied, a creditor would be forced to file suit within the statute of limitations or lose the right to do so, even when the debtor was willing to or in fact had reconfirmed the debt or paid part of the obligation in order to gain additional time. As part of the early common law, however, English courts carved out an exception to this harsh rule that allowed the debtor's sufficient promise, part payment, or acknowledgment to extend the limitations period. *Id.* at 1002. As part of the common law, this judicially created exception applied in Utah and elsewhere regardless of whether the promise, payment, or acknowledgment occurred before or after the statute of limitations had run. *See, e.g., Attorney Gen. v. Pomeroy,* 93 Utah 426, 477–78, 73 P.2d 1277, 1300 (1937) (establishing that acknowledgment of debt after statute of limitations had run could revive debt against the statute).

However, in 1943, the Utah legislature modified this statutory application of the common law by adding the last sentence to section 78–12–44, limiting the availability of rights of action barred by other statutes. The *Yergensen* court concluded that "a rea-

sonable interpretation of the last sentence ... would compel the conclusion that any statute which bars a right of action is conclusive unless its operation is suspended by the specific provisions of [section] 78–12–44." *Yergensen,* 16 Utah 2d at 399, 402 P.2d at 697. In other words, the statutory exception for a promise, part payment, or acknowledgment does not extend the limitations period if the promise, payment, or acknowledgment occurs *after* the applicable statute of limitations has run. Instead, the statute would have its extending effect only if the appropriate act occurs before the otherwise applicable limitations period initially expires.

 The last sentence of section 78–12–44 should not be taken out of context, but should be read with the section as a whole. To the extent that the sentence would prohibit the use of time-barred causes of action as defenses, the sentence is merely referring to the use of a "liability, debt or claim" founded upon contract as a ground for defense. Accordingly, the sentence should be read to prevent such time-barred causes of action from being asserted as affirmative defenses, in the sense that they would offset any liability, unless the specific provisions of section 78–12–44 extended the limitations period.

Thus, Hygro's concern that the trial court dismissed all of its defenses by application of section 78–12–44 is unfounded. Nevertheless, to the extent that any asserted defense in reality amounts to a counterclaim—by seeking to offset any liability arising from the initial claim rather than seeking to defeat the enforceability of the claim—applicable statutes of limitation will have effect. In such a case, "[w]hen a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court ..., if justice so requires, shall treat the pleadings as if there had been a proper designation." Utah R.Civ.P. 9(c).

 For example, Hygro asserts as a defense that it did not receive proper disbursement of loan funds. Hygro fails to establish how this assertion would prevent the bank from recovering on the defaulted loans. Accordingly, this defense appears to

be a reassertion of either its claim for breach of contract or its claim for negligent disbursal. Both claims are barred under the applicable statutes of limitations, and the defense is treated as a counterclaim that has been time barred.

Furthermore, Hygro asserts as defenses that the bank breached a fiduciary duty owed Hygro, breached the duties of good faith and fair dealing, and compelled Hygro to execute the loan agreements under economic duress. These three defenses were already addressed as counterclaims. Inasmuch as there was insufficient evidence to save these claims from the bank's motion for summary judgment against Hygro's counterclaim, there is insufficient evidence to support them as affirmative defenses to the bank's claims against Hygro.

Hygro also claims that conditions precedent to its liability have not been met; that the promissory notes were executed as to be valid only upon proper disbursement of the loan funds by the bank, the failure of which bars the bank from further recovery; that the bank materially altered the promissory notes, rendering them unenforceable; that the bank materially modified the notes and other loan documents, thereby releasing various defendants as guarantors; that the notes and guarantees are void for lack of consideration; that the bank's claims are barred by laches, waiver, and estoppel; and that the bank's actions render the loan documents unconscionable and unenforceable.

Despite asserting each of these defenses in its answer, Hygro has not presented any evidence to support them. "In resisting a motion for summary judgment, 'bare contentions, unsupported by any specifications of facts in support thereof, raise no material questions of fact.'" *First Sec. Fin. v. Okland Ltd.*, 750 P.2d 195, 197 (Utah App.1988) (quoting *Brigham Truck & Implement Co. v. Fridal*, 746 P.2d 1171, 1173 (Utah 1987) (per curiam)). As the party opposing the bank's properly supported motion for summary judgment, Hygro had "an affirmative duty to respond with affidavits or other materials allowed by rule 56(e) [of the Utah Rules of Civil Procedure]." *Thayne v.*

*Beneficial Utah, Inc.*, 874 P.2d 120, 124 (Utah 1994). Hygro simply did not meet its burden of presenting some evidence, by affidavit or otherwise, raising a credible issue of material fact with respect to any of these defenses. *See id.* at 125.

Hygro's remaining defenses concerning the Utah court's lack of jurisdiction and the bank's preclusion, under alleged Utah law, from foreclosing all real and personal property are totally unsupported by legal analysis or authority. Thus, we will not address them. *See Winter v. Northwest Pipeline Corp.*, 820 P.2d 916, 919 (Utah 1991).

## CONCLUSION

Hygro's unlitigated claims for breach of contract, negligent disbursal, and promissory estoppel are barred by the applicable statutes of limitation. In addition, Hygro has failed to provide evidence to support claims of economic duress, control, self-dealing, and breach of the duties of good faith and fair dealing. Even viewing the facts in Hygro's favor, it has failed to raise any material issue of fact. Accordingly, the trial court properly granted the bank's motion for summary judgment against Hygro's counterclaims.

Furthermore, Hygro has similarly failed to support its alleged affirmative defenses. Thus, the trial court properly granted the bank's motion for summary judgment on its complaint. We affirm.

REGNAL W. GARFF, Senior Judge, concurs.

ORME, Judge, concurring:

I CONCUR, EXCEPT THAT AS TO SECTION II, I CONCUR ONLY IN THE RESULT.