**Jack E. HORGAN, Plaintiff and Appellant,**

v.

**INDUSTRIAL DESIGN CORPORATION, a Utah corporation, Abe W. Mathews Engineering Corporation, a Minnesota Corporation, Defendants and Respondents.**

**No. 18104.**

Supreme Court of Utah.

Dec. 29, 1982.

Henry S. Nygaard, Salt Lake City, for plaintiff and appellant.

William L. Crawford, Salt Lake City, for defendants and respondents.

STEWART, Justice:

On this appeal plaintiff Jack Horgan, a former employee of the defendant corporations, seeks reversal of the trial court's adverse summary judgment in an action to recover losses stemming from the termination of plaintiff's employment.

Plaintiff began employment as an engineer with defendant Abe W. Mathews Engineering Corporation (AWMECO), a Minnesota corporation, in October 1957. In 1976 AWMECO acquired defendant Industrial Design Corporation (IDC), a Utah corporation. To assist in the supervision of this newly acquired subsidiary, the AWMECO directors decided to transfer plaintiff from Minnesota to Utah. Plaintiff agreed to make the transfer, allegedly in reliance upon oral assurances that all moving expenses would be paid, that he would receive bonuses and options for stock in IDC, and that he could eventually assume the presidency of IDC. Plaintiff subsequently moved to Utah, was paid over $6,800.00 in moving expenses, and went on the IDC payroll July 1, 1977.

Plaintiff's employment with IDC over the course of the following year was marked by conflicts and contention with IDC's president. The friction culminated in plaintiff's termination, effective June 30, 1978. Pursuant to an agreement between the parties, plaintiff received the following as termination compensation: 1) $123,200.00 for redemption of AWMECO stock held by plaintiff; 2) $18,522.45 from the AWMECO profit sharing plan; 3) $10,200.00 for three months' termination pay; 4) $3,400.00 for accumulated vacation pay; 5) six months' group health insurance premiums in the amount of $720.00; and 6) other miscellaneous payments.

Apparently satisfied with the terms of their termination agreement, both plaintiff and AWMECO signed, on August 28, 1978, a comprehensive mutual release whereby both parties waived all claims against the other and released each other from all obligations and liabilities arising out of the employment relationship. Thereafter, plaintiff wrote on September 7, 1978, to AWMECO:

> I feel that you have been just and equitable in this final settlement. I hold no animosity towards AWMECO since I also helped make the company what it is today. Hence I will always remember the good people, fun and disappointments of building a business as a most rewarding experience.

More than a year and a half later, on May 21, 1980, without having made any further demands or having voiced any dissatisfaction with the termination agreement, plaintiff filed suit against his former employers seeking additional termination compensation. Defendants raised the mutual release as a defense, and plaintiff replied that the release was unenforceable because he had signed it under duress and coercion. Following discovery, defendants moved for summary judgment based on the mutual release, and the trial court granted defendants' motion.

On this appeal, plaintiff argues that summary judgment was improper because of the existence of genuine material issues of fact as to his termination and the signing of the release that should have been tried.

In reviewing a summary judgment, we must evaluate all the evidence and all reasonable inferences fairly drawn from the evidence in a light most favorable to the party opposing summary judgment to determine whether there is a material issue of fact to be tried. *See Bihlmaier v. Carson,* Utah, 603 P.2d 790 (1979); *Durham v. Margetts,* Utah, 571 P.2d 1332 (1977). The movant is entitled to summary judgment only if he is "entitled to a judgment as a matter of law" on the undisputed facts. Utah R.Civ.P. 56(c).

■ We agree with plaintiff's assertion that there are genuine issues of fact concerning the termination; for example, whether or not his termination was voluntary, what representations AWMECO made, and whether those representations were binding. However, the mere existence of genuine issues of fact in the case as a whole does not preclude the entry of summary judgment if those issues are immaterial to resolution of the case. *Heglar Ranch, Inc. v. Stillman,* Utah, 619 P.2d 1390, 1391 (1980). We do not consider the disputed issues concerning the propriety of plaintiff's termination or the equity of the termination agreement to be material to the resolution of this case. The only material facts at this point concern the signing and terms of the mutual release; for if the release is valid and enforceable, plaintiff is precluded by its terms from asserting further claims against defendants. The only questions before us, then, are (1) whether there is a genuine issue concerning the signing or terms of the mutual release; and if not, (2) whether that release entitles defendants to a judgment as a matter of law.

■ The terms of the mutual release are undisputed. The release is comprehensive, precluding either party from ever asserting any employment-related claim against the other. Also undisputed are the facts that plaintiff signed the release, and that he read it and understood its significance prior to signing.

Plaintiff attempts to create a factual dispute as to the signing of the release by alleging that he signed under duress. The allegations of duress are that plaintiff was experiencing emotional distress from the unexpected loss of his employment and that he was in financial need of the termination compensation, especially the group health insurance, to help fund his handicapped son's impending surgery.

If there were a dispute concerning those facts and the law allowed recovery under them, they would qualify as jury questions sufficient to preclude summary judgment. It happens, however, that those facts are also undisputed. Whether those facts are sufficient to constitute duress is a question of law. 13 S. Williston, A Treatise on the Law of Contracts § 1602 (3d ed. 1970).

■ A release is a type of contract and may generally be enforced or rescinded on the same grounds as other contracts. *E.g., Coulter, Inc. v. Allen,* Wyo., 624 P.2d 1199, 1203 (1981); *Westfall v. Motors Insurance Corp.,* 140 Mont. 564, 374 P.2d 96, 98 (1962). The law favors the amicable, good faith settlement of claims, *Woods v. Gamache,* 14 Wash.App. 685, 544 P.2d 144 (1975), and the encouragement and preservation of such settlements "constitute strong arguments for enforcing releases," *Witt v. Watkins,* Alaska, 579 P.2d 1065, 1068 (1978). Generally, "[w]here an affirmative defense is stated, such as a valid release, which would defeat the cause of action, it is the duty of the court to grant a judgment based thereon." *Ulibarri v. Christenson,* 2 Utah 2d 367, 369, 275 P.2d 170, 171 (1954).

Plaintiff's only challenge to the validity of the release here at issue is that he signed it under duress, thus negating the mutual assent necessary for a valid contract. The meaning and scope of duress have changed gradually over the years from a narrow and strict early English application to a more broad and liberal modern application. *See, e.g., Fox v. Piercey,* 119 Utah 367, 227 P.2d 763 (1951); *Totem Marine Tug & Barge, Inc. v. Alyeska Pipeline Service Co.,* Alaska, 584 P.2d 15, 21 (1978); *Capps v. Georgia Pacific Corp.,* 253 Or. 248, 453 P.2d 935 (1969). In *Fox v. Piercey, supra,* we defined duress as "any wrongful act or threat which actually puts the victim in such fear as to compel him to act against his will." 119 Utah at 373, 227 P.2d at 766. We reaffirmed this definition in *Heglar Ranch, Inc. v. Stillman,* Utah, 619 P.2d 1390, 1391 (1980), and we follow it in this case, not as a rigid rule based on precise elements that must be satisfied in every case, but as a general definition to be applied flexibly to the distinct facts of each case. As Professor Williston states: " 'The law of duress has broadened somewhat during recent years making it virtually impossible to arrive at any clear-cut definition, and the courts have stated that its application must of necessity depend upon the circumstances of each individual case.' " 13 S. Williston, *supra,* § 1603 at 665 (*citing Urban Plumbing & Heating Co. v. United States,* 408 F.2d 382, 389 (Ct.Cl.1969)).

The question then is whether the alleged wrongful conduct or threats by defendants compelled or coerced plaintiff to sign the release against his will. Clearly not. Plaintiff relies on a letter to him from AWMECO, received prior to signing the release, which plaintiff claims threatened withholding termination pay because he had contemplated legal action. But plaintiff misreads that letter. It said that termination pay would be withheld pending resolution of the terms of plaintiff's stock redemption, not because of contemplated legal action. Plaintiff also claims to have signed under emotional distress caused by his termination, but emotional distress is not the equivalent of duress and is inadequate to invalidate the release. *Ulibarri v. Christenson,* 2 Utah 2d 367, 371, 275 P.2d 170, 172 (1954). Nor is plaintiff's claimed financial need an adequate defense to the release. "The mere fact that a contract is entered into under stress or pecuniary necessity is insufficient [to constitute duress]." *Retail Clerks Health & Welfare Trust Funds v. Shopland Supermarket, Inc.,* 96 Wash.2d 939, 944, 640 P.2d 1051, 1054 (1982). *See also Wood v. Dunlop,* 8 Wash. App. 957, 963, 510 P.2d 260, 265 n. 4 (1973),

aff'd in part and rev'd in part on other grounds, 83 Wash.2d 719, 521 P.2d 1177 (1974). Many releases are negotiated and signed out of economic necessity; to adopt plaintiff's argument would therefore invite the avoidance of many good faith settlements. We hold as a matter of law that plaintiff was not compelled by duress to sign the release against his will.

To constitute legal duress defendant must have acted against his will, and have had no other viable alternative. But that was not the case, as plaintiff could have sought relief from the courts or perhaps have obtained his termination compensation without signing a release. What we apparently have here is someone who was initially satisfied with his settlement, but who, upon subsequent reflection, concludes that he could have gotten more out of the deal and therefore attempts to renege on it. However, it is well settled that the mere fact of an improvident or bad bargain or a feeling of latent discontent is not a sufficient basis to avoid the effect of an otherwise valid release. *Wood v. Dunlop, supra,* 8 Wash.App. at 963, 510 P.2d at 265 n. 4; *McCloskey v. Porter,* 161 Mont. 307, 506 P.2d 845, 849–50 (1973).

In sum plaintiff did not sign the mutual release under duress; the release is valid and enforceable and the plaintiff's suit is barred by the release.

Affirmed. Costs to respondent.

HALL, C.J., and OAKS, HOWE and DURHAM, JJ., concur.