Brent C. **HILL, Audrey Hill, Russell W. Mangum, Carole Mangum, and Hill–Mangum Investments, a Utah general partnership, Plaintiffs and Appellants,**

v.

**SEATTLE FIRST NATIONAL BANK, Defendant and Appellee.**

No. 890375.

Supreme Court of Utah.

Feb. 24, 1992.

Frederick N. Green, Julie V. Lund, Salt Lake City, for plaintiffs and appellants.

W. Cullen Battle, P. Bruce Badger, Salt Lake City, for defendant and appellee.

ZIMMERMAN, Justice:

Plaintiffs Brent C. Hill, Audrey Hill, Russell W. Mangum, Carole Mangum, and Hill–Mangum Investments (collectively "Hill–Mangum") brought suit against Seattle First National Bank ("Seattle First") alleging, inter alia, that it breached a contractual obligation to Hill–Mangum when it improperly tendered a loan to Hill–Mangum to First Security for its purchase. As a result of the improper tender, First Security did not purchase the loan, to Hill–Mangum's detriment. The trial court granted summary judgment for Seattle First, finding inter alia, that a prior federal court decision collaterally estopped Hill–Mangum from claiming contractual rights against Seattle First.

On appeal, Hill–Mangum challenges this summary judgment. Because we hold that the prior federal court proceeding never fully explored the contractual relationship between Hill–Mangum and Seattle First, collateral estoppel does not prevent Hill–Mangum from relitigating the issue. In addition, we conclude that Hill–Mangum has presented affidavit evidence that raises an issue of material fact, precluding summary judgment.

When reviewing a grant of summary judgment, we accord the trial court's legal determinations no deference because summary judgment disposes of the action as a matter of law. Utah R.Civ.P. 56(c); *Pratt v. Mitchell Hollow Irrigation Co.,* 813 P.2d 1169, 1171 (Utah 1991); *Landes v. Capital City Bank,* 795 P.2d 1127, 1129 (Utah 1990). To determine whether a genuine issue of material fact precludes summary judgment, we view the facts in a light most favorable to the nonmoving party. *Ron Case Roofing & Asphalt Paving, Inc. v. Blomquist,* 773 P.2d 1382, 1385 (Utah 1989); *Arrow Indus. v. Zions First Nat'l Bank,* 767 P.2d 935, 937 (Utah 1988). We recite the facts in this case accordingly.

In 1980, Hill–Mangum began development of a ten-story, multimillion-dollar condominium complex in Salt Lake City. Hill–Mangum approached First Security for construction financing. Although First Security originally agreed to finance the project, ultimately it was unable to provide the loan. Instead, it offered Hill–Mangum a "take-out loan commitment," an agreement to purchase the loan in the future, subject to certain conditions. Having such a commitment would assist Hill–Mangum in obtaining a loan from another lending institution. When Hill–Mangum sought a loan from The Citizens Bank in Ogden, Utah, First Security agreed to extend the take-out loan commitment to Citizens and did so on March 31, 1980. Citizens, which Seattle First was in the process of acquiring, tentatively agreed to provide the initial financing. However, because of the size of the loan, Citizens requested that Hill–Mangum go to Seattle First's main office in Seattle, Washington, to obtain final approval of the agreement. During a meeting in Seattle, Hill–Mangum met with representatives of Seattle First, who approved the loan and stated that Citizens in Ogden would handle the paperwork. However, Seattle First never acquired Citizens.

In April 1980, Hill–Mangum executed a promissory note for $3,300,000 to Citizens evidencing the loan. In October 1981 and April 1982, Hill–Mangum modified the original note by executing two subsequent notes to Citizens for $3,800,000 each. Seattle First purchased a 90 percent participation interest in the first note, a 100 percent interest in the second note, and a 90 percent interest in the third. Citizens retained a 10 percent interest in the notes in which Seattle–First had a 90 percent interest.

The note matured on May 1, 1983. When Citizens presented the loan to First Security for purchase under the terms of the take-out loan commitment, First Security refused to purchase the loan. The loan then went into default, which spawned federal and state litigation involving Hill–Mangum, Citizens, and Seattle First. Because this appeal involves issues of collateral estoppel, we will examine the prior proceedings in some detail. We will then address Hill–Mangum's claims on appeal.

Citizens commenced the original foreclosure action against Hill–Mangum in state court on December 13, 1984. Hill–Mangum filed a counterclaim against Citizens and a third-party complaint against Seattle First. In the counterclaim and third-party complaint, Hill–Mangum raised a number of claims, two of which bear on this appeal.[1] It alleged, first, that Citizens and Seattle First breached an agreement to tender the purchase of the construction loan to First Security in accordance with the specific terms of the take-out loan commitment given by First Security, and second, that Citizens and Seattle First failed to provide financing for individual purchasers of condominiums in breach of an oral agreement with Hill–Mangum. The third-party complaint was never served on Seattle First.

Citizens went into receivership in 1985. The Utah Department of Financial Institutions took over its operation and named the Federal Deposit Insurance Corporation ("the FDIC") as receiver. The FDIC removed the case to federal court. The court granted partial summary judgment to the FDIC on the foreclosure of the note and on Hill–Mangum's counterclaim. *FDIC v. Hill–Mangum Investments,* No. 86C–1020J, slip op. at 4 (D.Utah May 2, 1988).

Judgment for $3,960,874 in favor of Citizens was entered on April 13, 1990. No appeal was taken, and that judgment became final.

In granting judgment for Citizens on Hill–Mangum's counterclaims, the federal court addressed only one of the issues now before this court, i.e., Hill–Mangum's claim that Citizens had failed to properly tender the loan to First Security in accordance with the requirements of the take-out agreement. The court found that Hill–Mangum had withdrawn its second claim, which alleged that Citizens and Seattle First had failed to abide by the terms of an oral agreement that required them to provide financing for individual condominium sales.

In disposing of the claim of improper tender, the court reasoned that Hill–Mangum had no rights under the take-out agreement between Citizens and First Security because it was not a party to the agreement and because the take-out loan commitment lacked specific language upon which third-party rights in favor of Hill–Mangum might be based. The court relied on *W.T. Langley v. Federal Deposit Ins. Corp.,* 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987). There, the United States Supreme Court held that in cases against the FDIC, evidence outside the written terms of an agreement cannot be used to establish contractual liability. *Id.* Based on *Langley,* the federal trial court ruled inadmissible any evidence of oral representations that might establish a contract. Accordingly, the court found that to any extent that Hill–Mangum claimed rights under the alleged oral commitment as against the FDIC, *Langley* barred its claims as a matter of law.

---

**1.** The third-party complaint and counterclaim alleged the following causes of action: (1) that Citizens and Seattle First breached a contract to charge Hill–Mangum an interest rate 2¼ percent above the prime rate of Seattle First; (2) that Citizens and Seattle First breached an agreement to tender the purchase of the construction loan to First Security under the terms of the take-out loan commitment given by First Security; (3) that the actions described in claims one, two, and four of the complaint were done to intentionally harm Hill–Mangum's business relationships; (4) that Citizens and Seattle First failed to provide financing for individual purchasers of condominiums in breach of oral agreement; (5) that Citizens and Seattle First misrepresented the prime interest rate, inducing Hill–Mangum to enter into the loan agreement with the intent to defraud Hill–Mangum; (6) that Citizens and Seattle First violated RICO statutes; and (7) that Citizens and Seattle First violated state racketeering statutes.

After the federal court's decision, Hill–Mangum brought the same claims against Seattle First in state court, alleging, inter alia, that Seattle First breached an agreement to tender the take-out loan to First Security and that Seattle First failed to provide financing for individual condominium purchasers in breach of an oral contract with Hill–Mangum.

Seattle First moved for summary judgment on January 25, 1989, contending that there was no contract, either oral or written, between it and Hill–Mangum. In addition, Seattle First argued that res judicata and collateral estoppel barred relitigation of that issue and that the statute of limitations barred any claim asserting Seattle First's failure to provide financing to individual condominium purchasers. Alan C. Espey, a Seattle First vice president, provided an affidavit in support of the motion for summary judgment.

Initially Hill–Mangum's previous counsel did not respond to Seattle First's motion, and the court granted summary judgment for Seattle First, dismissing all Hill–Mangum's claims with prejudice. Hill–Mangum moved to set aside the judgment of dismissal, and the court granted the motion. In Hill–Mangum's memorandum in support of the motion to set aside, it addressed the issues raised in Seattle First's motion for summary judgment. Specifically, Hill–Mangum presented, by way of affidavit, evidence that established it did have a contract with Seattle First, based in part on parol evidence, and that the failure to provide financing to individual condominium purchasers occurred within the period of the statute of limitations. As for Seattle–First's reliance on collateral estoppel, Hill–Mangum contended that the doctrine had no application because under the *Langley* rule, which is applicable only in suits against the FDIC, the federal court had refused to consider any parol evidence of an agreement to present the loan for take-out.

During the hearing opposing summary judgment, Hill–Mangum took the position that although Citizens and Seattle First were both involved in the negotiation and supervision of the loan, Seattle First was really the party with whom Hill–Mangum had contracted. Hill–Mangum identified a number of factors in support of this position, including the March 1980 meeting in Seattle, additional meetings that occurred over the period of the loan in both Seattle and Utah, Seattle First's purchased participation in the loan, Seattle First's supervision of the marketing of the condominium complex, Seattle First's alleged promise to finance individual loans for purchasers of condominiums, Seattle First's visit to Utah to review potential property exchanges as part of financing, Seattle First's direct control over changes and modifications of the loan agreement, and Seattle First's overall supervision of the project.

Because Hill–Mangum directed its argument toward objecting to Seattle First's motion for summary judgment instead of supporting its own motion to set aside summary judgment, the trial judge deemed Seattle First's motion for summary judgment "fully resubmitted." He then granted Seattle First's motion for summary judgment. The court ruled that the prior federal decision collaterally estopped Hill–Mangum from claiming that Seattle First breached a contract to present the take-out loan for purchase, saying that the federal court had determined that Hill–Mangum had no such written contractual rights against the FDIC, which was standing in Citizen's stead. The court's ruling reads as follows:

> The consequences flowing from *Langley* are not entitled to collateral estoppel effect but the plaintiffs [Hill–Mangum] in this action are collaterally estopped from challenging the independent, underlying findings and conclusions, i.e., the *written commitment* created no rights in favor of these plaintiffs.

(Emphasis added.) In so ruling, the court did not address whether something other than the written documents might have created enforceable contract rights. Hill–Mangum retained new counsel and appealed.

We agree that the federal court ruling bars any claim Hill–Mangum might base on the written agreement. However, to the extent that the trial court relied on collateral estoppel to bar an inquiry into the

rights created by an oral agreement, it erred.

■ We begin with a statement of the law of collateral estoppel. Collateral estoppel, or more precisely, issue preclusion, prevents relitigation of issues already determined in a previous action. *See Madsen v. Borthick*, 769 P.2d 245, 250 (Utah 1988). Collateral estoppel applies if four requirements are met:

First, the issue in both cases must be identical. Second, the judgment must be final with respect to that issue. Third, the issue must have been fully, fairly, and competently litigated in the first action. Fourth, the party who is precluded from litigating the issue must be either a party to the first action or a privy of a party.

*Id.* If any one of these requirements is not satisfied, there can be no issue preclusion. *Baxter v. Department of Transp.*, 705 P.2d 1167, 1168 (Utah 1985); *Wilde v. Mid-Century Ins. Co.*, 635 P.2d 417, 419 (Utah 1981).

■ It is clear that the doctrine of issue preclusion does not operate here. The federal court never addressed the question of whether oral discussions between Citizens and/or Seattle First and Hill–Mangum gave rise to an enforceable contract. Although we agree that the federal court determined that the written documents gave rise to no contractual liability on the part of Citizens, and by extension Seattle First, the federal court never reached the question of whether Seattle First and/or Citizens had a contractual obligation to present the take-out loan commitment that was not reflected in the written contract. The federal court had no occasion to address the issue because it based its ruling on the *Langley* doctrine, which made any oral agreement unenforceable against the FDIC. But *Langley* has no application in a proceeding against Seattle First. Therefore, the state court should have considered the merits of Hill–Mangum's parol evidence contract claim.

In so ruling, we take no position on whether such an oral agreement existed; we merely note that the claim of such an agreement raises an issue of fact that precludes summary judgment if adequately supported. We remand to the trial court for further proceedings on this issue.

The second issue Hill–Mangum raises on appeal is that the trial court erred in granting summary judgment on the claim that Seattle First breached the terms of an oral agreement when it refused to grant loans to individuals interested in purchasing condominiums. In dismissing the claim, the trial court found that Hill–Mangum had "not presented admissible evidence of any particular purchase financing arrangement which was wrongfully rejected by Seattle First within the four-year limitations period." The court further noted, "Affidavit testimony that 18 unspecified offers were submitted to [Seattle First] 'between August 1983 to the date of foreclosure' is inadequate." The question before us is whether Hill–Mangum presented evidence sufficient to preclude summary judgment that the alleged wrongful acts occurred within the statutory period.

Rule 56 of the Utah Rules of Civil Procedure allows the trial court to grant summary judgment if upon the pleadings and supporting affidavits there is no genuine issue of material fact. Utah R.Civ.P. 56. The rule further provides:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his [or her] pleading, but his [or her] response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

Utah R.Civ.P. 56(e).

Here, Seattle First supported its motion for summary judgment with affidavit evidence that it did not refuse to provide financing to qualified individual condominium purchasers. The affidavit of Alan C. Espey states, "Seattle–First would have been willing to finance qualified purchasers of units in Garden Towers, but Seattle First was never presented with an opportunity to do so." Espey stated that the one occasion on which Hill–Mangum ap-

proached Seattle First in connection with the sale of the condominium was in August 1983. This was more than four years before the filing of the state court action, and any resultant claim would be barred by the statute of limitations for actions on an oral contract. Utah Code Ann. § 78–12–25(1) (Supp.1991).

Hill–Mangum countered with affidavits asserting that from early 1983 until shortly before foreclosure in 1987, it presented Seattle First with a number of loan applications from prospective purchasers. Some of these presentations would have occurred within the period of the statute of limitations. One of Hill–Mangum's affidavits, made by Ned Fox, asserts that he personally presented eighteen loan applications during that time frame and that "[Seattle First] promised financing on all sales." Russell W. Mangum, Jr., provided an affidavit stating that the eighteen applications for financing were made by credit-worthy applicants. Hill–Mangum asserts that it never received a response either accepting or rejecting any of the applications. The trial court reviewed this affidavit evidence and concluded that Hill–Mangum had failed to counter a factual inference raised by the Seattle First affidavit that any alleged violation of the oral contract occurred after the period of the statute of limitations.

■ We affirm a trial court's grant of a motion for summary judgment on any reasonable legal basis even if not relied on below. *See Zions First Nat'l Bank v. National Am. Title Ins. Co.*, 749 P.2d 651, 654 (Utah 1988); *cf. Cambelt Int'l Corp. v. Dalton*, 745 P.2d 1239, 1241–42 (Utah 1987). However, any rationale for affirming a decision must find support in the record. Seattle First urges affirmance by arguing that even if it had agreed to provide financing, no record evidence supports a finding that it acted improperly with regard to the loan applications Hill–Mangum presented. The trial court held and Seattle First argues that Hill–Mangum's assertions that eighteen applications were made within the limitations period of the statute are inadmissible because the affidavits do not provide enough specific evidence for these conclusory statements. We do not agree. From the face of the affidavits, we can divine no reason why their factual assertions are inadmissible.

■ Seattle First's affidavit asserts that it did not receive applications from "qualified purchasers." Significantly, however, it does not assert that it did not receive applications. From this, we can infer that the applications were sent and received but denied because Seattle First found the applicants unqualified. The affidavit of Ned Fox asserts that Seattle First agreed to provide financing to *all* applicants, not just those it deemed qualified. However improbable such an agreement may appear, whether Seattle First agreed to provide financing to all applicants without regard to their qualifications is a question of fact. Furthermore, even if we were to assume a requirement of credit-worthiness, Russell Mangum's affidavit asserts that the applicants were credit-worthy. Thus, there remains an issue of fact as to whether any of the applicants met the terms of the alleged agreement between Seattle–First and Hill–Mangum. Construing all facts and reasonable inferences to be drawn therefrom in a light most favorable to Hill–Mangum, as we must, we conclude that a material issue of fact is present and that summary judgment was proscribed. *Ron Case Roofing & Asphalt Paving, Inc. v. Blomquist*, 773 P.2d 1382, 1385; *Arrow Indus. v. Zions First Nat'l Bank*, 767 P.2d 935, 937. Therefore, we reverse and remand for further proceedings consistent with this opinion.

HALL, C.J., HOWE, Associate C.J., and STEWART and DURHAM, JJ., concur.